NOT RECOMMENDED FOR PUBLICATION

Nos. 19-5466/19-5467

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | |
|---|---|
| KRUTI DESAI; MELANIE B. FINK; BELINDA GALE PARKERSON; JEREMY PARKERSON; DANIEL POPP; JAMES ROSS; CAROLYN VINCENT, ) ) ) ) | **FILED** Nov 09, 2020 DEBORAH S. HUNT, Clerk |

KRUTI DESAI; MELANIE B. FINK; BELINDA )
GALE PARKERSON; JEREMY PARKERSON; )
DANIEL POPP; JAMES ROSS; CAROLYN )
VINCENT, )
                              )
    Plaintiffs-Appellees/Cross-Appellants, )
                              )
v.                               )
                              )
CHARTER COMMUNICATIONS, LLC, )
                              )
    Defendant-Appellant/Cross-Appellee. )

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE WESTERN
DISTRICT OF KENTUCKY

---

Before: GIBBONS, LARSEN, and NALBANDIAN, Circuit Judges.

**ORDER OF CERTIFICATION TO THE SUPREME COURT OF KENTUCKY**

**PER CURIAM.** This court, invoking Kentucky Rule of Civil Procedure 76.37 ("Certification of question of law"), requests the Supreme Court of Kentucky to exercise its discretion to answer two certified questions of Kentucky law. The answers to these questions may be determinative of this cause and there is no controlling precedent in the decisions of the Supreme Court of Kentucky or Court of Appeals of Kentucky. Pursuant to Rule 76.37(3), this Order of Certification sets forth the following:

    (a) Questions of law to be answered;

    (b) Statement of relevant facts and nature of the controversy;

    (c) Names of appellants and appellees; and

    (d) Names and addresses of counsel.

## (a) Questions of Law

*Question 1*: Under Kentucky law, where a plaintiff has alleged that a statement is defamatory *per se* because it imputes criminality, must the statement be defamatory *per se* on its face, standing alone, without resorting to external considerations like context and extrinsic facts? And if external information can be considered to determine whether a statement is defamatory *per se*, are those external considerations limited to the context in which the words are used within the same communication or can extrinsic facts also be considered?

*Question 2*: Before awarding punitive damages in a defamation *per se* case, must the jury find that the defendant from whom such damages are sought acted with oppression, malice, or fraud by clear and convincing evidence, or may the jury rely on a presumption of malice?

## (b) Statement of Relevant Facts and Nature of the Controversy

These questions arise out of a dispute between Charter Communications, LLC and seven former Charter employees ("Plaintiffs"). Plaintiffs were terminated after Charter discovered that Plaintiffs had taken home HP printers that Charter had acquired through an incentive program with OfficeMax. Plaintiffs took these printers home after Linda Showalter, an administrative assistant to two high-ranking Charter executives, approached them and offered them the printers. Based on conversations with other Charter employees, Showalter believed that she had the authority to give away these printers. And based on assurances from Showalter, Plaintiffs believed they had authority to take the printers home. When Charter learned that employees were taking the printers home, it launched an investigation that ended in the termination of Plaintiffs for employment policy violations.

A few weeks after Plaintiffs were terminated, Roger Simms, a Charter manager, gave a presentation at a Charter leadership conference. Approximately sixty of Plaintiffs' former co-workers attended this presentation. During the presentation, Simms displayed a PowerPoint slide titled "Leadership and Judgment," which included a bullet-point list referencing

2

"'Operation[s]' . . . Green Light, Buzz-kill, [and] Printer-gate." DE 186-5, Slide Deck, PageID 4526. Operations Green Light and Buzz-kill were understood to refer, respectively, to incidents where a company credit card was used for personal purchases and over twenty employees were terminated for drug policy violations. The attendees understood the term "Printer-gate" to refer to the incident involving termination of Plaintiffs. Simms did not specifically name Plaintiffs, but the attendees knew who was terminated in connection with the printer incident.

Although Simms did not go into much detail about any of the above incidents, he used them as "examples of poor judgment" by "[n]ot bad people" who "made the wrong choices." DE 186-5, Slide Deck, PageID 4526. Simms never mentioned the word "theft," but he also never clarified that Showalter had given them the printers under apparent authority. One attendee testified that she understood Simms to be calling Plaintiffs thieves.

Around an hour after Simms's presentation, Anthony Barnard, director of customer operations at Charter, gave another presentation. Barnard did not use the term "Printer-gate" in his presentation, but he echoed Simms's language regarding "not bad people" who "made some wrong choices" by referencing O.J. Simpson and Pete Rose—former professional athletes whose careers were tainted by their criminal activity—as "more examples of good people that had [done] something wrong." DE 173, Trial Tr., PageID 3974–75. One attendee understood this reference as comparing Plaintiffs to Simpson and Rose, which he said "left a bad taste in a lot of people's mouths." DE 172, Trial Tr., PageID 3665.

Plaintiffs sued Charter for defamation and various other torts in federal district court, but by trial, the only remaining claim was the defamation claim. Plaintiffs proceeded on a theory of defamation *per se*, arguing that Charter's presentation at the leadership conference implied that they had committed theft. At the close of Plaintiffs' case, Charter moved for judgment as a matter

of law, contending that its use of "Printer-gate" could not constitute defamation *per se* because it was not objectively defamatory on its face. The district court denied Charter's motion.

After the presentation of evidence, the judge instructed the jury on the elements of defamation *per se* as well as the standards for both compensatory and punitive damages. Charter requested that the court instruct the jury that it could not award punitive damages unless it found by "clear and convincing evidence," that Charter acted with oppression, malice, or fraud. DE 173, Trial Tr., PageID 4069 (referring to Ky. Rev. Stat. § 411.184(2) (1988)). The district court declined to issue that instruction because it concluded that "malice is presumed under Kentucky law in cases of defamation per se." DE 175, Trial Tr., PageID 4093.

The jury returned a verdict against Charter and awarded each plaintiff $350,000 in compensatory damages and $1 million in punitive damages. On a renewed motion for judgment as a matter of law, the district court reduced the punitive damages award for each plaintiff to $350,000. Charter then appealed to this court.

i.      Nature of the Controversy: Question 1

Charter first argues that the defamation *per se* question should have never been submitted to the jury because Plaintiffs did not establish a prima facie case of defamation *per se* under Kentucky law. Charter contends that the district court applied an erroneous legal standard by looking to whether Charter's use of "Printer-gate," in context, could have reasonably been understood to accuse Plaintiffs of criminal theft; instead, Charter claims, the proper standard is whether the term "Printer-gate," on its face, "clearly and unequivocally" accused Plaintiffs of theft.

In support, Charter points to the explanation of defamation *per se* and defamation *per quod* in *Digest Publishing Co. v. Perry Publishing Co.*, 284 S.W.2d 832, 834 (Ky. 1955). As Charter notes, that case explained how statements that are defamatory *per se* "necessarily damage

plaintiff[s]," while defamation *per quod* claims "are actionable in consequence of extrinsic facts showing the circumstances under which they were written or spoken and the damages resulting therefrom." *Digest*, 284 S.W.2d at 834. Charter emphasizes *Digest*'s use of the word "necessarily" to suggest that defamation *per se* requires the statement to be defamatory on its face, while *per quod* actions require "extrinsic facts" to establish a defamatory meaning.

It also relies on language from *Stringer v. Wal-Mart Stores, Inc.*, that a defamatory statement must be "clear[] and unequivocal[]" in order to be actionable *per se* and that statements are defamatory *per se* only when they are "actionable on their face," and thus cannot depend on "extrinsic evidence of context or circumstances." 151 S.W.3d 781, 793–95 (Ky. 2004), *overruled on other grounds by Toler v. Süd-Chemie, Inc.*, 458 S.W.3d 276 (Ky. 2014).

Plaintiffs respond that Charter has cherry-picked these quotations from *Stringer* and that, when read as a whole, *Stringer* actually supports their case. Specifically, they argue that the "extrinsic evidence" language in *Stringer* "does not mean that any use of extrinsic evidence to explain the *meaning* of a defamatory statement—what a reasonable listener would understand it to mean—transforms this case from *per se* to *per quod*." They also cite to other cases, such as *Deitchman v. Bowles*, 179 S.W. 249 (Ky. 1919) and *Yancey v. Hamilton*, 786 S.W.2d 854 (Ky. 1989), that they believe stand for the proposition that context and extrinsic evidence can be considered when determining whether statements are actionable *per se*.

David Elder's Treatise on Kentucky Tort Law notes that there is precedent in Kentucky that supports both Charter's and Plaintiffs' positions. *See generally* DAVID A. ELDER, KENTUCKY

5

TORT LAW: DEFAMATION AND THE RIGHT OF PRIVACY, § 1.08 (1983) (discussing "Confusion in Kentucky Precedents" on this issue). This confusion has never been resolved.[1]

Given the existence of conflicting precedent and the clarity that resolving this issue will give parties litigating defamation *per se* claims in Kentucky, we respectfully request that the Supreme Court of Kentucky answer the first certified question in this cause.

ii.        Nature of the Controversy: Question 2

Charter argues that the punitive damages award was improper because the district court refused to instruct the jury that it must find "clear and convincing evidence" of oppression, fraud, or malice. In making this argument, Charter relies on Kentucky Revised Statute 411.184(2), which states that "[a] plaintiff shall recover punitive damages only upon proving, by clear and convincing evidence, that the defendant from whom such damages are sought acted toward the plaintiff with oppression, fraud or malice." This statute is "applicable to all cases in which punitive damages are sought and supersedes any and all existing statutory or judicial law insofar as such law is inconsistent with the provisions of this statute." *Id.* § 411.184(5).

Despite this statute, Plaintiffs argue that the common law presumption of malice still applies in defamation *per se* cases. Any other conclusion, according to Plaintiffs, would violate the "jural rights" doctrine enshrined in the Kentucky Constitution. In support, Plaintiffs cite *Williams v. Wilson*, a Kentucky Supreme Court case holding that one subsection of the punitive

---

[1] Federal courts applying Kentucky law have endorsed both lines of cases. *Compare Gearhart v. WSAZ. Inc.*, 150 F. Supp. 98, 109 (E.D. Ky. 1957) (suggesting that whether a publication is libelous per se can be determined by "the jury, taking into consideration all the circumstances in evidence, to determine what conclusions might be conveyed to the readers"), *aff'd sub nom. WSAZ, Inc. v. Lyons*, 254 F.2d 242 (6th Cir. 1958) *with Roche v. Home Depot U.S.A.*, 197 F. App'x 395, 399 (6th Cir. 2006) ("In determining whether a writing is libelous per se, courts must stay within the 'four corners' of the written communication. . . . The face of the writing must be stripped of all innuendos and explanations.") *and Sandmann v. WP Co.*, 401 F. Supp.3d 781, 790 (E.D. Ky. 2019) (same).

damages statute—which required a "subjective awareness that harm will result" before an award of punitive damages could be granted in a gross negligence case—was unconstitutional under the "jural rights" doctrine because it "vastly elevated" the standard for recovery under the common law. 972 S.W.2d 260, 264–65 (Ky. 1998). They also cite two Kentucky defamation *per se* cases decided after the enactment of the punitive damages statute that permitted punitive damages based on a presumption of malice. *See Stringer v. Wal-Mart Stores, Inc.*, 151 S.W.3d 781, 794 (Ky. 2004) (noting that defamatory *per se* statements carry a "presumption of both malice and damage" (quoting *Walker v. Tucker*, 295 S.W. 138, 139 (Ky. 1927))); *id.* at 794 n.43 ("If the word or words charged are actionable per se, the law presumes malice, and punitive damages may be recovered." (quoting *Ray v. Shemwell*, 217 S.W. 351, 353 (Ky. 1919)); *Randy's Body Shop, Inc. v. Ky. Farm Bureau Mut. Ins. Co*, No. 2002-CA-001614-MR, 2004 WL 405742, at \*3 (Ky. Ct. App. 2004) ("[T]he very nature of [a *per se*] defamatory utterance is presumptive evidence of the injury to reputation and of the ill will otherwise necessary to support a punitive award.") (quoting *Columbia Sussex Corp. v. Hay*, 627 S.W.2d 270, 274 (Ky. Ct. App. 1982))).

*Williams* and these two cases do not, however, squarely answer the question of whether the presumption of malice continues to apply in defamation *per se* cases. *Williams* "expressed 'no opinion'" regarding the constitutionality of section 2 of the punitive damages statute, which provides the clear and convincing standard. *Anderson v. Wade*, 33 F. App'x 750, 758 (6th Cir. 2002) (quoting *Williams*, 972 S.W.2d at 269); Ky. Rev. Stat. § 411.184(2). And the two other cases that Plaintiffs cite made only passing reference to the presumption of malice by citing cases that predated the punitive damages statute. *See Toler v. Süd-Chemie, Inc.*, 458 S.W.3d 276, 286 (Ky. 2014) (noting that while *Stringer* "made mention" of the presumption of malice, "that mention was merely a stray quotation from an antiquated case").

7

We are not aware of any precedent from Kentucky courts that provides clear guidance on whether to apply the "clear and convincing" standard announced in the statute or the common law presumption of malice. Given the existence of conflicting precedent and the far-reaching consequences that a decision will have on the availability of punitive damages in defamation *per se* cases in Kentucky, we respectfully request that the Supreme Court of Kentucky answer the second certified question in this cause.

### (c) Names of Appellants and Appellees

*Appellant/Cross-Appellee*

Charter Communications, LLC

*Appellees/Cross-Appellants*

Kruti Desai
Melanie B. Fink
Belinda Gale Parkerson
Jeremy Parkerson
Daniel Popp
James Ross
Carolyn Vincent

### (d) Names and addresses of counsel

*Counsel for Appellant/Cross-Appellee*

John C. O'Quinn
Tracie Lynn Bryant
Kasdin Miller Mitchell
Kirkland & Ellis
1301 Pennsylvania Avenue, N.W.
Washington D.C. 20004

*Counsel for Appellees/Cross-Appellants*

Rachel Sarah Bloomekatz
Law Office
37 W. Dominion Boulevard
Columbus, Ohio 43214

Nos. 19-5466/19-5467, *Kruti Desai v. Charter Communications, LLC*

Thomas E. Carroll
Lance Wilson Turner
Carroll & Turner
56 Court Street
Monticello, KY 42633

### (e) Certification Order

Pursuant to the foregoing, and invoking Rule 76.37 of the Kentucky Rules of Civil Procedure, it is hereby ORDERED:

(1) that the Questions be, and the same hereby are, certified to the Supreme Court of Kentucky

(2) that the clerk forward to the Supreme Court of Kentucky, under our official seal, a copy of this Order of Certification

(3) that to the extent requested by the Supreme Court of Kentucky, the Clerk provide that Court with the original or copies of all or such portions of the record before this Court as the Supreme Court of Kentucky deems necessary to a determination of the Question.

This Order of Certification is entered by Judge Gibbons, as the Judge presiding at oral argument in this Court, pursuant to Rule 76.37(4) of the Kentucky Rules of Civil Procedure, with the concurrences of Judge Larsen and Judge Nalbandian.

FOR THE COURT:

*Julia Smith Gibbons*
Julia Smith Gibbons, Circuit Judge
United States Court of Appeals for the Sixth Circuit

9